ROWE vs. HAMILTON.

A feme covert cannot bar her right of dower by any release made to the husband during the coverture.

*Dower, unde nihil habet.* The tenant pleaded in bar, that he was one of the lawful heirs of *John Rowe*, the demandant's husband, and claimed a portion of the lands by descent ;—and that by a certain deed indented between the husband in his life time, and the wife, they mutually agreed to live separate and apart ; and the husband therein agreed to pay and did pay her four hundred dollars for her own separate use and maintenance ;—and acquitted to her the right of dower which she had in the estate of her former husband ;—and released to her his right, by virtue of the marriage, to any estate of her late farther ;—and covenanted that he would not revoke a letter of attorney he had given to her to receive her share in her father's estate to her own use ;—and that she might at all times thereafter live separate and apart from him ;—wholly renouncing his marital rights to her person and society, and to any estate she might afterwards acquire ;—and further covenanted that neither he nor his executors or administrators should ever intermeddle with such estate, or interrupt any disposition she might make of it ;—in consideration whereof the demandant on her part covenanted and agreed with the husband to accept and take the same in full satisfaction for her support and maintenance, and also all alimony whatever, during her coverture ; and also in full satisfaction of her right of dower in her husband's estate ;—and averred that the husband in his life time, and his executors and administrators, had faithfully kept and performed all the covenants on his part to be performed, &c.

To this the demandant replied, that at the time of making and sealing the said instrument she was covert of the said *John Rowe*, her husband, and so continued to the time of his death. Whereupon the tenant demurred in law.

*Orr*, for the tenant, relied on the colonial ordinance of 1641, *Antient Char.* p. 99, which provides that all wives shall be

endowed of the estate of which the husband was seised, unless released by the feme *by deed acknowledged before a magistrate.* This ordinance, he contended, expressly recognised the power in a feme covert, to release her claim to dower by deed acknowledged ; and it did not expire with the first charter as is said in *Fowler v. Shearer* 7 *Mass.* 20—but was expressly revived by the first acts of the provincial legislature under the charter of William and Mary. *An. Char.* 213, 229. And the law to be, deduced from these statutes is, that a feme covert, by her own deed, may estop herself from claiming dower in the estate of her husband ; and such deed is thus made equivalent to a fine levied by her. *Eare v. Snow & al.* 1 *Plowd.* 514. 2 *Bac. Abr.* 139, 140. 2 *Rol. Abr.* 395. 10 *Co.* 43. 1 *Dane's Abr.* 94.

*Longfellow* for the demandant.

MELLEN C. J. delivered the opinion of the Court as follows.

The plea in bar discloses an agreement under the hands and seals of the demandant and her late husband, made during the coverture, whereby for certain valuable considerations therein expressed, she covenanted not to demand dower in any of his estate ; and the question is, whether the plea is a good bar to the action ; or, in other words, whether the agreement or covenant is legal and valid.

It seems to be a well settled principle of the common law that a *husband* cannot by deed convey lands to his *wife* during the coverture. This principle is recognised and adopted by this Court in the case of *Martin v. Martin* 1 *Greenl.* 394 ;—and it would seem *as* clear, and perhaps *more so*, that a *wife* cannot by deed convey her own lands to her *husband* during the marriage.—Whatever decisions may have taken place in the Courts of Chancery, extending the powers of a feme covert in certain cases, over her own property, or sanctioning contracts between baron and feme, the common law, by which we must be governed in our decision, considers the husband and wife so far *one person*, as to disallow such conveyances and declare them to be void. These principles are founded upon what have been considered reasons of sound policy. Neither can the wife convey her own lands to a

*stranger*, unless the husband joins with her in the deed. Such is her legal incapacity in these particulars. The principles of law applicable to cases of this nature are fully and clearly stated by the Court in the case of *Fowler v. Shearer*, cited in the argument. The only instance in which she can *at law* affect her own interest in real estate by *her own separate deed*, is by a release of her right of dower to the grantee of her husband. In this case by the usage or common law of New England, such release, made in consideration of the husband's conveyance, may be considered as effectual as though she had *joined* with him in his conveyance, and thereby released her right. The principles of the common law of *England*, as adopted in this State and *Massachusetts*, seem not to be contested by the counsel for the tenant ; neither does he contend that he has any defence, provided the case of *Fowler v. Shearer* is to be received by this Court as an authority, and founded on correct principles. But it is urged, that though the covenant of the demandant, which is pleaded in bar in the nature of a release of dower, may not be good at common law, still it is good and effectual in virtue of the ordinance of the Colony of *Massachusetts Bay* passed in 1641, as *revived* and *continued* by certain provincial statutes, which were not noticed or considered by the Court in the decision of *Fowler v. Shearer*. This renders. it necessary for us to examine those statutes and compare them with each other and with *that* decision.

The abovementioned ordinance secured to the wife her dower, unless she had barred herself by *some act* or *consent*, signified by *writing under her hand*, and acknowledged before some magistrate. This ordinance expired with the first charter. But by a provincial statute passed in *June* 1692, it was enacted that all the local laws respectively ordered and made by the then late government and company of the *Massachusetts Bay*, and the then late government of *New Plymouth*, should remain and continue in force until the tenth of *November* of that year. Before that day a second act was passed, by which the preceding act of *June* was continued in force " until the general assembly should take *further order*." No *further order* was taken by the assembly until the year 1697, when the statute was passed, entitled " an act for registering

deeds and conveyances." The *first* section of this statute pre-
scribes how deeds shall be executed, acknowledged and record-
ed ; and their effect when *not so* acknowledged and recorded.
The *second* section prescribes the proceedings which are to be
had for proving a deed when a grantor shall refuse to acknowl-
edge it ; and declares that the " grantee or vendee filing a copy
" of his deed so proved, in the Register's office, shall thereby
" secure his title in the mean time, and the same shall be ac-
" counted sufficient caution to every other person or persons
" against purchasing the estate in such deed mentioned to be
" granted." Then follows this proviso—" Provided that nothing
" in this act shall be construed, deemed or extended to bar any
" widow of *any vendor* or *mortgagor* of lands or tenements from
" her dower or right in or to *such* lands or tenements, who did not
" *legally join with her husband* in such sale or mortgage ; or other-
" wise *lawfully* bar or exclude herself from such her dower or
" right." It is true that *Parsons C. J.* in delivering the opinion
of the Court in *Fowler v. Shearer* did not take any notice of the
two provincial statutes of 1696, *reviving* and *continuing* the ordi-
nance of 1641 in force ; and the reason probably is that he
considered them as superseded and virtually repealed by the
abovementioned statute of 1697. But it is not important to
inquire into the *reasons* of the omission, because we consider
the *omission itself* as unimportant. The *writing under the hand of
the wife,* mentioned in the ordinance of 1641, is described to be
one " which shall bar her from any right or interest in such es-
tate,"—thus leaving it to be decided by the principles of the
common law, *what* " writing under her hand" shall be deemed
sufficient for that purpose. Therefore, unless a release by the
*wife* to the *husband,* is a " writing" of that description, according
to the principles of the common law, the ordinance of 1641, even
if in force *now,* will not avail the tenant in the present action.

But we consider the statute of 1697, as superseding all ante-
rior statutes and provisions in relation to the question under
consideration. The language of that statute, so far as is contained
in the proviso, and the meaning of the legislature in using it, we
apprehend cannot easily be misunderstood. The whole act has
relation to deeds of sale and mortgage ;—the mode of their exe-

cution, acknowledgement, proof, registry, and their effect ;— and the deed or instrument by which dower is to be barred, is a deed or instrument by which a wife extinguishes her right of dower in lands *so conveyed by her husband*. It has reference to nothing else but a release of dower to the *grantee* of the husband. It does not contemplate a release *by* the *wife* to the *husband*. Besides, the statute speaks of her barring herself by *legally joining with her husband* in such sale or mortgage ; or otherwise *lawfully* barring herself ;—leaving it to the common law to determine what *is a lawful bar* or release of her dower. This review of the ordinance of 1641 and the several subsequent provincial statutes, clearly shews that the Court, in the decision of *Fowler v. Shearer*, examined every principle of common or statute law which had any bearing upon the cause. We are satisfied with the principles on which that decision is founded ; and are of opinion that the plea in bar is bad and insufficient in law ; and the tenant is entitled to judgment.